'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

RAY A. MAXWELL,

            Defendant.

CR 04-732-RSWL-1

**ORDER re: Defendant's Motion for Compassionate Release/Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)**
[1225]

    Currently before the Court is Defendant Ray A. Maxwell's ("Defendant") Motion for Compassionate Release/Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion") [1225].

    Having reviewed all papers submitted pertaining to the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Defendant's Motion.

## I.  BACKGROUND

    On March 27, 2007, Defendant pled guilty to one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; one count of attempted armed bank

1

robbery and two counts of armed bank robbery in
violation of 18 U.S.C. § 2113(a), (d); and one count of
discharging a firearm during a crime of violence in
violation of 18 U.S.C. § 924(c)(1)(A)(iii).  See Plea
Agreement, ECF No. 544; Minutes of Mot. Hr'g and Change
of Plea Hr'g 2, ECF No. 556.  This Court sentenced
Defendant to a term of 360 months in prison on May 5,
2008.  J. and Probation/Commitment Order 1, ECF No. 884.
Defendant appealed from the judgment of conviction and
sentence, and the Ninth Circuit affirmed.  See United
States v. Maxwell, 360 F. App'x 896, 898 (9th Cir.
2009).

In 2010, Defendant filed a Motion Under 28 U.S.C. §
2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody [1014], which the Court denied
[1046].  The Court also denied [1051] Defendant's Rule
59(e) Motion for Reconsideration to Alter or Amend
Judgment [1049].  In 2014, Defendant filed another
Application Under 28 U.S.C. § 2255 to Vacate, Set Aside,
or Correct Sentence by a Person in Federal Custody
[1064], which the Court dismissed [1070].  The Court
subsequently denied [1077] Defendant's Petition for
Reconsideration [1072].  In 2016, Defendant filed his
third § 2255 motion [1168], which the Court also denied
[1178].  On June 27, 2019, Defendant filed a Motion to
Reopen Case [1216].  The Court denied [1217] that motion
because it was, in substance, a successive habeas corpus
petition filed without pre-certification by the Ninth

1  Circuit.  <u>See</u> Order re: Pet'r's Mot. to Reopen Case and
2  to Appoint Counsel 2:11-5:2, ECF No. 1217.
3      Defendant filed the instant Motion [1225] on July
4  29, 2020, and an Addendum to Motion [1228] on August 27,
5  2020.  The government opposed [1229] on September 9,
6  2020, and Defendant filed a response and request for
7  appointment of counsel [1237] on September 22, 2020.
8  Defendant is currently serving his sentence at FCI
9  Victorville Medium I, and his projected release date is
10 March 12, 2030.  United States' Resp. to Def.'s Mot.
11 ("Opp'n") 3:12-13, ECF No. 1229.
12                    **II.   DISCUSSION**
13 **A.   <u>Legal Standard</u>**
14      The First Step Act, Pub. L. No. 115-391, 132 Stat.
15 5194, was enacted in 2018 and permits a defendant to
16 directly petition the district court for a sentence
17 reduction under the compassionate release statute.  <u>See</u>
18 18 U.S.C. § 3582(c)(1)(A).  18 U.S.C. § 3582(c)(1)(A)
19 establishes a three-step process for courts to evaluate
20 a defendant's request for compassionate release.  A
21 defendant must establish each of the three prongs by a
22 preponderance of the evidence.  <u>See</u> <u>United States v.</u>
23 <u>Resnik</u>, No. CR 16-201 PA, 2020 WL 6803250, at *2 (C.D.
24 Cal. Oct. 13, 2020) (citing <u>United States v. Sprague</u>,
25 135 F.3d 1301, 1306-07 (9th Cir. 1998)).
26      First, a defendant must exhaust administrative
27 remedies either by "exhaust[ing] all administrative
28 rights to appeal a failure of the Bureau of Prisons to

3

bring a motion on the defendant's behalf" or by waiting
until thirty days have lapsed "from the receipt of such
a request by the warden of the defendant's facility" to
reduce the term of imprisonment.  18 U.S.C. §
3582(c)(1)(A).  Second, the district court evaluates
whether "extraordinary and compelling reasons warrant
such a reduction" and whether such a reduction "is
consistent with applicable policy statements issued by
the Sentencing Commission."  Id.  Third, the court
considers the sentencing factors outlined in "section
3553(a) to the extent that they are applicable."  Id.

**B.  Discussion**

    1.  Request for Appointment of Counsel

    In his response to the government's Opposition,
Defendant requests appointment of counsel "out of
necessity in the middle of this pandemic."  Resp. to and
Appointment of Counsel 1, ECF No. 1237.  Defendant
states that, due to a nationwide lockdown of the Bureau
of Prison's ("BOP") facilities, "no inmates have been
permitted to access the law library to research or
prepare legal document[s]."  Id.

    A defendant does not have a Sixth Amendment right
to counsel when bringing a motion under 18 U.S.C. §
3582(c).  United States v. Townsend, 98 F.3d 510, 512-13
(9th Cir. 1996); see Pennsylvania v. Finley, 481 U.S.
551, 555 (1987) ("[T]he right to appointed counsel
extends to the first appeal of right, and no further.").
"Nor is there any statutory right to counsel in

1    connection with a motion brought under 18 U.S.C. §

2    3582(c)." <u>U.S.A. v. Bond</u>, No. LA CR94-00563 JAK, 2020

3    WL 4340257, at *1 (C.D. Cal. Feb. 25, 2020).  Because

4    Defendant is not entitled to appointed counsel, and the

5    Motion does not entail complex issues requiring

6    assistance of counsel, Defendant's request for

7    appointment of counsel is **DENIED**.

8         2.   <u>Motion for Compassionate Release</u>

9              a.  *Exhaustion of Administrative Remedies*

10    Defendant asserts that, before filing this Motion,

11   Defendant "first tried to exhaust his administrative

12   remedy by providing his counselor . . . the appropriate

13   Request to Staff."  Mot. for Compassionate

14   Release/Reduction of Sentence Pursuant to 18 U.S.C. §

15   3582(c)(1)(A) ("Mot.") 1, ECF No. 1225.  The government

16   contends that Defendant has not complied with the

17   exhaustion requirement because he failed to wait the

18   requisite thirty days after filing a request.  Opp'n

19   1:9-11, 11:23-24.  The government alleges, without any

20   evidentiary support, that the warden received

21   Defendant's compassionate release request on July 2,

22   2020.  <u>Id.</u> at 3:18-19.  By contrast, Defendant provides

23   a copy of his compassionate release request to the

24   warden, which is dated June 23, 2020.  <u>See</u> Inmate Req.

25   to Staff, ECF No. 1225.  More than thirty days have

26   elapsed between the date of Defendant's request and the

27   filing of the Motion, and the warden has not responded

28   to his request.  Mot. 1.  Accordingly, in the absence of

evidence to the contrary, the Court assumes that Defendant has satisfied the exhaustion requirement for the purposes of this Order.

b. *Extraordinary and Compelling Reasons*

According to the Sentencing Commission's policy statement,[1] "extraordinary and compelling reasons" warranting compassionate release may include a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." United States v. Habash, No. 1:15-cr-00286-DAD-BAM, 2020 WL 6381586, at *4 (E.D. Cal. Oct. 30, 2020) (quoting U.S.S.G. § 1B1.13, cmt n.1 (A)-(D)).  A defendant seeking compassionate release based on a medical condition must show that he suffers from a serious condition or impairment "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt n.1 (A).

Several courts have held that defendants' medical conditions warrant compassionate release in light of the

_____

[1] Courts are split as to whether the Sentencing Commission's policy statement is applicable.  See United States v. Jones, No. 94-cr-20079-EJD-1, 2020 WL 5359636, at *5 (N.D. Cal. Aug. 27, 2020) (discussing that some courts have found the policy statement outdated, while others have found its terms to be binding).  The Court need not, however, determine whether it is bound by the policy statement at this juncture.  Even if the Court were permitted to consider circumstances beyond those detailed in the policy statement, the Court does not find extraordinary and compelling reasons here beyond those delineated in the policy statement.

COVID-19 pandemic.  See, e.g., United States v. Rodriguez, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (granting a motion for compassionate release based on the defendant's underlying health conditions, the COVID-19 pandemic, and the defendant's temporal proximity to his release date); United States v. Aburto, No. 18-cr-1975-GPC, 2020 WL 6802184, at *5 (S.D. Cal. Aug. 25, 2020) (granting the defendant's motion for compassionate release "[i]n light of the heightened medical risk the COVID-19 pandemic poses to [defendant] in particular"). But release must be based on a defendant's particular susceptibility to COVID-19, not the generalized risks associated with the pandemic.  See Resnik, 2020 WL 6803250, at *3 (noting that "general concern [about possible exposure to COVID-19] is shared by the public at large, as well as all incarcerated individuals"); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he possibility that [COVID-19] may spread to a particular prison alone cannot independently justify compassionate release . . . .").

Here, Defendant argues that extraordinary and compelling reasons warrant compassionate release or a reduction in sentence because "older Black men" with preexisting medical conditions, like Defendant, are "at the highest risk of contracting [COVID-19] and dying from it."  Mot. 2.  The government contends that Defendant has not offered any case-specific facts establishing his eligibility for compassionate release

1  or provided any evidence that he will be less likely to

2  contract COVID-19 if released.  Opp'n 17:5-6, 19:21-25.

3      Defendant does not identify specific medical

4  conditions in his Motion, and a review of his medical

5  records reveal none that render him at increased risk of

6  serious illness as a result of COVID-19.  See generally

7  Ex. C to Opp'n ("BOP Health Problems"), ECF No. 1229-3.

8  Among Defendant's current medical conditions, only

9  hypertension is on the CDC's list of potential risk

10 factors.  See People With Certain Medical Conditions,

11 CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-

12 extra-precautions/people-with-medical-conditions.html

13 (Dec. 29, 2020).  But the CDC does not consider

14 hypertension as a definitive risk factor, asserting only

15 that there "might" be an increased risk.  Id.  Multiple

16 studies have reached different conclusions about the

17 risk associated with hypertension.  Evidence Used to

18 Update the List of Underlying Medical Conditions that

19 Increase a Person's Risk of Severe Illness from COVID-

20 19, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-

21 extra-precautions/evidence-table.html (Nov. 2, 2020)

22 (indicating that there is "[m]ixed [e]vidence" with

23 respect to hypertension).  At this juncture, the Court

24 cannot conclude that hypertension qualifies as a

25 sufficiently serious condition that warrants

26 compassionate release,[2] particularly where Defendant

27

28      [2] Numerous courts have denied release for individuals whose
only potential COVID-19 risk factor is hypertension.  See, e.g.,

fails to show that his essential hypertension is a "serious condition" or that FCI Victorville is "unable to monitor and adequately treat his medical condition[]."  <u>Habash</u>, 2020 WL 6381586, at *4 (citation omitted); <u>see also</u> <u>United States v. Sehorn</u>, No. 95cr72 WQH, 2020 WL 7342657, at *4 (S.D. Cal. Dec. 14, 2020) ("Chronic conditions, such as hypertension . . . , that can be managed in prison are not a sufficient basis for compassionate release.").

Defendant's age is also not a significant risk factor that entitles him to compassionate release or a reduction in sentence.  While Defendant, at fifty-six years old, is more susceptible to the harms of COVID-19 than those in younger age groups, he is not in the age group at highest risk of severe outcomes.  <u>See</u> <u>Older Adults</u>, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Dec. 13,

<u>United States v. Johnson</u>, No. CR19-55RSM, 2020 WL 4495981, at *3 (W.D. Wash. Aug. 4, 2020) (finding no extraordinary and compelling reasons where the defendant, who suffered from hypertension, had "no other high-risk medical conditions"); <u>United States v. Upshaw</u>, No. 1:14-CR-00256-NONE, 2020 WL 5909512, at *5 (E.D. Cal. Oct. 6, 2020) ("[H]ypertension alongside the risk of contracting COVID-19, without more, is not a 'serious' medical condition that would qualify a prisoner for compassionate release."); <u>United States v. Ackerman</u>, No. CR 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (collecting cases and stating that "[w]here, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted"); <u>United States v. Colbert</u>, No. 99-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) ("Hypertension, a condition that affects about 46% of the U.S. adult population . . . [is] not [an] 'extraordinary and compelling' condition[].").

2020) (stating that eighty percent of COVID-19 deaths reported in the United States have involved adults sixty-five years of age or older).

Likewise, Defendant's "race is not itself a risk factor" for serious illness from the virus.  <u>United States v. Scott</u>, No. CR13-156 TSZ, 2020 WL 7043593, at *1 (W.D. Wash. Dec. 1, 2020); <u>see also</u> <u>Jones</u>, 2020 WL 5359636, at *9 ("The Court may quickly dispose of [the defendant]'s argument to the extent it is based on his being African American.").  Although it is true that the CDC has reported higher rates of hospitalization among some racial and ethnic minority groups, including non-Hispanic African Americans, the CDC has not indicated that those groups are inherently more susceptible to COVID-19.  <u>See</u> <u>COVID-19 Hospitalization and Death by Race/Ethnicity</u>, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (Nov. 30, 2020) (noting that "[r]ace and ethnicity are risk markers for other underlying conditions that affect health, including socioeconomic status, access to health care, and exposure to the virus related to occupation").

Further, the fact that Defendant has already contracted COVID-19 and apparently recovered, without requiring medical care for severe effects, weighs against finding the existence of extraordinary and compelling circumstances.  <u>See</u> Addendum to Mot. 1; BOP Health Problems 6.  "[G]ranting him release arguably

will not provide him with the protection sought by his [M]otion: relief from the risk of contracting COVID-19." United States v. Alaniz, No. 15-cr-00329-DAD-BAM, 2020 WL 4059581, at *5 (E.D. Cal. July 20, 2020) (citation omitted); see also United States v. Purry, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020) ("The premise of [the inmates]'s request was that his release would help prevent him from contracting the virus.  That need vanished when [the inmate] tested positive for the virus.").  Although Defendant argues that there is no reason to assume that the BOP will be able to protect him from reinfection, id., current guidance indicates that reinfection is unlikely.  As the CDC states, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."  Reinfection with COVID-19, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (Oct. 27, 2020).  And the United States Department of Health and Human Services reports that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again.  Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small."  I Had COVID-19 in the Past, U.S. Dep't of Health & Hum. Servs., https://combatcovid.hhs.gov/ive-had-covid-19 (last visited Jan. 26, 2021).
///

1    Lastly, Defendant relies on the existence of
2  confirmed COVID-19 cases within BOP facilities,
3  particularly in California.  <u>See</u> Mot. 3-4.  Although FCI
4  Victorville Medium I, where Defendant is housed, is
5  currently reporting 41 inmates and 21 staff members with
6  confirmed active cases and, unfortunately, the deaths of
7  2 inmates and 1 staff member, 626 inmates and 57 staff
8  members have recovered from the virus.  <u>See</u> <u>COVID-19</u>
9  <u>Cases</u>, Fed. Bureau of Prisons, https://www.bop.gov/
10 coronavirus/ (last visited Jan. 28, 2021).  This
11 suggests that FCI Victorville is able to provide
12 adequate medical care if Defendant experiences a rare
13 reinfection.  Defendant has not demonstrated otherwise.
14 And again, Defendant's apparent recovery without
15 suffering serious illness belies his argument.  While
16 the Court understands Defendant's concerns, "[g]eneral
17 concerns about possible exposure to COVID-19 do not meet
18 the criteria for extraordinary and compelling reasons
19 for a reduction in sentence set forth in the Sentencing
20 Commission's policy statement on compassionate release,
21 U.S.S.G. § 1B1.13."  <u>United States v. Eberhart</u>, 448 F.
22 Supp. 3d 1086, 1090 (N.D. Cal. 2020).
23    Because Defendant has not carried his burden to
24 demonstrate that extraordinary and compelling reasons
25 warrant his early release, he is not entitled to
26 compassionate release or a sentence reduction under 18
27 U.S.C. § 3582(c)(1)(A).  <u>See</u> <u>United States v. Greenhut</u>,
28 No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D.

Cal. Jan. 31, 2020) ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction." (citing <u>Sprague</u>, 135 F.3d at 1306-07)).  Therefore, the Court need not address whether such relief would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) or whether Defendant may present a danger to the safety of the community.

### III.   CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**

DATED: January 28, 2021       _/s/ Ronald S.W. Lew_
                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge